JEREMY WILLIAMS                                                        PETITIONER

v.                                                        CASE NO. 3:10-CV-P641-R

CLARK TAYLOR                                                          RESPONDENT

**FINDINGS OF FACT
CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**

This habeas corpus action involves a Kentucky state prisoner convicted of first-degree sexual abuse and of being a persistent felony offender, second degree (PFO 2), in 2005 in the circuit court of Hardin County, Kentucky[1]. The prisoner, Jeremy Williams, chose to plead guilty to the charged offenses on advice of his appointed counsel in return for a recommendation by the prosecutor for a minimum five year sentence. After the trial court accepted the guilty plea, Williams unsuccessfully attempted to withdraw it, arguing that he had been coerced by his attorney. The trial court disagreed, denied the motion to withdraw, and imposed the recommended sentence.

Williams took a direct appeal to the Kentucky Court of Appeals. On appeal, he argued that he was not sufficiently informed of the elements of first degree sexual abuse under KRS 510.110 because he was not advised of the specific type of contact with the victim required to satisfy the element of "forcible compulsion" required by the statute[2]. The Court of Appeals rejected this argument because Williams had not timely raised it below. *See Williams v.*

---

[1] (DN 13, exh. 3, Judgment of conviction).

[2] (DN 13, exh. 4, brief on appeal in 2005-CA- 001531-MR at pp. 4-7).

*Commonwealth*, 233 S.W.3d 206, 211 ( Ky App. 2007)(*Williams I*).

In a footnote in its opinion, the Court of Appeals noted that while the accusatory portion of the indictment returned against Williams on August 31, 2004 specifically charged him with the violation of KRS 510.110 and correctly identified the statute as "First Degree Sexual Abuse" including its correct designation as a class D felony, the descriptive part of the indictment located immediately below alleged only that Williams had committed the charged offense when he subjected the victim to "sexual contact."[3]  *Williams I,* 233 S.W.3d at 207 n.3. No mention of the element of "forcible compulsion" was included in the descriptive part of the indictment.  *Id.*  Thus, viewed in isolation, the factual allegations of the descriptive portion charged only the misdemeanor offense of sexual abuse in the third degree, a class B misdemeanor under KRS 510.130.

The Court of Appeals in its footnote in *Williams I* continued to note that any possible confusion created by the missing element in the description section of the indictment was cured when the indictment was examined as a whole.  *Id.*  The court held that the accusatory portion of the indictment correctly identified the statute, its classification as a class D felony, and the name of the crime.  Further, the court added at the conclusion of the footnote that any defect in the indictment, other than a claim of lack of jurisdiction, was waived by the failure of Williams to raise such a defect by pretrial motion.  *Williams I*, 233 S.W.3d at 207 n.3 (citing

_____

[3] (DN 13, exh. 2, Indictment) (The caption of the Indictment specifically identified the charge of "First-Degree Sexual Abuse; Class "D" Felony" and included a reference to K.R.S. 510.110, the correct statute for the named offense.  Count I of the indictment, however, charged only  "That on or about the 31st day of May, 2004, in Hardin County, Kentucky the above named Defendant committed the offense of First-Degree Sexual Abuse when he subjected "T.M." to sexual contact.").

Kentucky Rule of Criminal Procedure (RCr ) 8.18).[4]

After the Court of Appeals found Williams' challenge to the knowing, voluntary and intelligent nature of his plea to be procedurally barred, Williams returned to the trial court to file a post-conviction motion to vacate his judgment of conviction pursuant to RCr 11.42. Williams argued in the trial court that his retained attorney, Nancy Bowman-Denton, rendered ineffective assistance of counsel by her failure to challenge the defective indictment given the absence of the forcible compulsion element in the description of the charged offense of first degree sexual assault[5]. The trial court conducted an evidentiary hearing on Dec. 15, 2008.[6] Both Williams and Bowman-Denton testified at the hearing. Their testimony is reflected in the six-page opinion rendered by the trial court.[7]

The trial court found in its order that Williams' attorney testified she made a tactical decision not to file a motion to dismiss the indictment prior to trial. Such a motion, according to her testimony, would merely alert the Commonwealth to its error and provide the prosecution with additional time either to amend the indictment to add the omitted element, or simply to re-indict her client. Her strategy was instead to wait until the time of trial so as to have a better argument that her client was unfairly prejudiced by the omission of a material element of the charged offense. Because Williams elected to plead guilty, however, Bowman-Denton did

---

[4] "Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that if fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial." RCr 8.18

[5] (DN 13, exh 8, Findings, Conclusions and Order of the Hardin Circuit Court, p. 1).

[6] (Id.).

[7] (Id.).

not have the opportunity to raise the issue at trial.[8]

       The trial court specifically found that Bowman-Denton's decision in this respect was reasonable given that under 6.12[9] of the Kentucky Rules of Criminal Procedure, a defect in an indictment ordinarily does not invalidate the charge, and an indictment may be amended in accordance with Rule 6.16[10] at any time before a verdict is returned, so long as the substantial rights of the defendant are not prejudiced (DN 13, Exh. 8, p. 2). The trial court continued in its decision to find that Williams in fact had sufficient notice of the charge against him, in part because of the direct reference to the relevant statute, KRS 510.110, and the specific identification of the charge as a felony offense.[11]

       The trial court then found that attorney Bowman-Denton met with Williams on at least eight occasions prior to the entry of his guilty plea to discuss his case with him and that Bowman-Denton reviewed the discovery provided by the prosecution, which included a factual description of Williams' alleged misconduct. Further, Bowman-Denton also was found to have advised Williams that third-degree sexual abuse under KRS 510.130 would be a lesser included offense if Williams elected to stand trial, so that the issue of force would be a factor in any trial

---

[8] (DN 13, exh. 8, order at pp. 1-2).

[9] RCr 6.12 ("An indictment, information, complaint or citation shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits.").

[10] RCr 6.16 ("The court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.").

[11] (DN 13, exh 8, order at pp. 3-5).

proceedings.[12]  Williams in fact admitted during the hearing that he had read the statute defining

first degree sexual abuse, KRS 510.110 and had discussed the issue of force with his attorney.[13]

Williams specifically discussed this issue with Bowman-Denton because he believed that no

force had been used in the incident merely because he reached through the open front door of the

victim's home and grabbed her breast.

Bowman-Denton testified during the hearing that she was legitimately concerned

about the possible admission of Williams' prior bad acts under K.R.E. 404(b), as Williams was

on felony probation at the time that he committed the charged offense, and therefore faced up to

a possible 10-year sentence to be served consecutively with the probated prior sentence if

convicted.[14]

Based on this evidence, the trial court in its order found that the level of force

needed to establish "forcible compulsion" under KRS 501.110 was "open to debate."[15]  The

court noted on this point that the statute does not require any particular level of physical force to

satisfy this element of the statute.  Further, the pre-sentence investigation report, which Williams

did not challenge, revealed that the Commonwealth alleged that Williams had reached inside the

front door of the victim's home and "grabbed" her breast, which was not in the court's view

merely a "touching."  Additionally, the same report noted that upon being repulsed initially by

T.M., Williams' returned to the victim's front door and pounded on the door terrorizing the

---

[12] (Id.).

[13] (Id. at p. 3).

[14] (Id. at pp. 3-4).

[15](DN 13, Exh. 8, p. 4).

victim who, in her impact statement, described her fear of a possible scenario if Williams had been able to force his way into her home. Given these circumstances, the trial court held in its order that while it was debatable whether forcible compulsion could have been shown at trial, the material question was not whether forcible compulsion absolutely could have been established, but rather whether Bowman-Denton was ineffective in her representation.[16]

The trial court at the conclusion of its RCr 11.42 opinion held that Bowman-Denton had not rendered a deficient performance in electing to defer a challenge to the sufficiency of the indictment, nor had Williams demonstrated that but for her performance, a reasonably probability existed that he would have chosen not to enter a plea of guilty to the minimum sentence possible on the felony charge, but rather would have insisted on going to trial to face the possible prospect of a ten-year sentence.

In support of this conclusion, the trial court noted that Williams faced the possibility that damaging Rule 404(b) evidence might have been introduced against him at trial. The question of what degree of force was sufficient was an open question that Williams and Bowman-Denton had discussed repeatedly. Williams was well aware that it was possible that he might have been able at trial to establish a misdemeanor level offense rather than a felony offense, but also was aware that he was facing a significant amount of prison time if he received the maximum sentence following conviction.[17] For these reasons, the trial court denied Williams' motion for RCr 11.42 relief. Williams filed an unsuccessful motion to reconsider in which he did not deny the trial court's findings of fact, but instead argued that its legal

---

[16] (Id.).

[17] (DN 13, Exh. 8, p. 5-6)

conclusions were erroneous.

In 2009, Williams took a second appeal to the Kentucky Court of Appeals.[18]   As

before, he argued on appeal that Bowman-Denton was ineffective when she failed to file a

motion to dismiss the indictment based on the lack of a "forcible compulsion" element in the

factual description of the charged offense, which requires that the defendant subject another

person to sexual conduct by forcible compulsion.[19]  *Williams II*, 2010 WL 199430 at *2.  In

rejecting this argument, the Kentucky Court of Appeals held as follows:

> Here, any error by counsel in failing to file a motion to dismiss the
> indictment did not lead to a reasonable probability that Williams
> would not have plead guilty and would have insisted on going to
> trial.  Kentucky courts have held that an indictment is sufficient if
> it informs the accused of the specific offense with which he is
> charged and does not mislead him.  *Wylie v. Commonwealth*, 556
> S.W.2d 1, 1 (Ky. 1977).  The indictment need not detail the
> essential elements of the charged crime so long as it "fairly
> informs the accused of the nature of the charged crime [.]"
> *Thomas v. Commonwealth*, 931 S. W. 2d 446, 449 (Ky. 1996).
>
> In this case, Williams had sufficient notice of the charge against
> him because of the statutory reference and the indication that a
> felony-level offense was alleged in the indictment.  Williams
> admitted that he read the statute defining First-Degree Sexual
> Abuse.  Further, the trial court found, and Williams did not
> dispute, that counsel had met with Williams on several occasions
> and that she went over the discovery with him, which included a
> description of Williams' alleged conduct.  Williams also conceded
> that his counsel advised him that Third-Degree Sexual Abuse
> would be a lesser included offense if the case went to trial.  The
> trial court found, and Williams did not dispute, that his attorney
> specifically explained that the issue of whether force was used
> would be a factor in the proceeding.  As the trial court found, at the

---

[18]*See, Williams v. Commonwealth*, App. No. 2009-CA-000163-MR, 2010 WL 199430
(Ky. App. Aug. 18, 2010) (*Williams II*).

[19] (DN 13, exh. 9, Brief of Appellant in 1009-CA-000163 at pp. 3-8).

> time that Williams pled guilty, it appears that he knew that he may
> have been able to establish a misdemeanor level of offense, rather
> than the felony to which he pled. Therefore, counsel's failure to
> file a motion to dismiss the indictment, while perhaps unwise, did
> not necessarily influence Williams' decision to plead guilty.
> Because of this failure to meet both of the elements of the modified
> *Strickland* test in these circumstances, Williams has failed to carry
> the considerable burden he has to show that his counsel was
> ineffective.

*Williams II*, 2010 WL 199430 at **2-3.[20]  Accordingly, the Court of Appeals for a second time

affirmed the decision of the lower court.

Williams subsequently filed a motion for a discretionary review pursuant to

Kentucky Rule of Civil Procedure (C.R.)76.20 to the Kentucky Supreme Court.[21]  Williams

argued in this motion for the first time in the state court proceedings that the defect in the

indictment created by the discrepancy between its accusatory and descriptive portions made it

impossible to determine what offense the Hardin County grand jury charged with the result that

the trial court lacked subject matter jurisdiction to render a judgment against Williams.[22]  In this

respect, Williams distinguished between the notice function and the jurisdictional function of an

indictment in Kentucky.  While he assumed that the indictment provided adequate notice and

acknowledged the binding nature of the lower court findings that he had discussed the indictment

with counsel, Williams contended that it does not follow that the indictment thereby satisfied the

jurisdictional function.

---

[20] (DN 13, exh. 12, *Williams II* at pp. 5-6).

[21] (DN 13, exh. 13, Motion for Discretionary Review in 2010-SC-109-D).

[22](Id. at p. 4-13)

Williams supported his view with a discussion of a series of Kentucky cases.[23] He argued, based solely on the cited Kentucky cases, and without citation to the U.S. Constitution or federal case law, that "guidance" was needed from the Kentucky Supreme Court to explain under what circumstances a flaw in a state indictment will compromise the jurisdiction of the circuit court (DN 13, Exh. 13, p. 10). The Commonwealth filed a response in opposition to Williams' motion for discretionary review.[24] Upon consideration, the Kentucky Supreme Court denied Williams' motion by order entered without opinion on August 18, 2010.

## CONCLUSIONS OF LAW

Two months later on October 14, 2010, Williams proceeded to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.[25] In his memorandum of law filed in support of the petition, Williams explains that the question now presented to the federal courts on § 2254 review involves "the jurisdictional function of an indictment."[26] Specifically, Williams describes the issued raised as follows:

> Does a trial court lack subject matter jurisdiction when a defect in the indictment makes it impossible to discern which offense the grand jury intended to return an indictment for?

(DN 1, Memo. p. 3).

---

[23] *See, Commonwealth v. Adams*, 92 Ky. 134, 17 S.W. 276 (1981); *Singleton v. Commonwealth*, 306 Ky. 454, 208 S.W.2d 325 (1948); *Nelson v. Shake*, 82 S.W.3d 914, 916 (Ky. 2002); *Myers v. Commonwealth*, 42 SW. 3d 594, 596 (Ky. 2001) *overruled by McClanahan v. Commonwealth*, 398 S.W.3d 694 (Ky. 2010)..

[24] (DN 13, exh. 14, Response to Motion for Discretionary Review)

[25] (DN 1, Petition for Habeas Corpus relief)

[26] (DN 1, Memorandum of law, p. 1).

Williams insists that the Hardin Circuit Court lacked the subject matter jurisdiction to enter the 2005 judgment of conviction against him given the alleged material deficiency in the indictment. As support for this view, he points the Court to § 12 of the Kentucky constitution, which he contends provides that accusation by a felony indictment is a matter of substantive due process.[27] While Williams does assume that he received adequate notice of the charged offense of sexual abuse in the first degree, he argues that this notice function is a function separate and apart from the jurisdictional function of the indictment so that an indictment which provides adequate notice does not *ipso facto* satisfy the jurisdictional function.[28]

As he did below, Williams cites only Kentucky state court cases in support of his views on subject matter jurisdiction.[29] Williams insists based on these same state decisions that the conflict between the accusatory and descriptive portions of his indictment calls into question the intention of the Hardin County grand jury so that the trial court had an obligation *sua sponte* to address the situation prior to accepting his plea of guilty on March 22, 2005. At a minimum, Williams contends that his trial counsel, had she been effective, should have raised the jurisdictional issue in a timely fashion rather than permit the court to enter an arguably void judgment against the Petitioner.

---

[27] (DN 1, Memo. p. 6) (citing *Malone v. Commonwealth*, 30 S.W.3d 180, 194 (Ky. 2000)).

[28] (Id.).

[29] *Commonwealth v. Adams*, 92 Ky. 134, 17 S.W. 276 (1891); *Singleton v. Commonwealth*, 306 Ky. 454, 208 S.W.2d 325 (1948); *Nelson v. Shake*, 82 S.W.3d 914, 916 (Ky. 2002); and *Myers v. Commonwealth*, 42 S.W.3d 594, 596 (Ky. 2001)*, overruled by McClanahan v. Commonwealth*, 398 S.W.3d 694 (Ky. 2010).

Williams includes in his memorandum a list of the perceived deficiencies of his trial counsel, which includes: failure to file a motion to dismiss or to bring the flaw in the indictment to the trial court's attention; failure to object when the trial court established an inadequate factual basis for his guilty plea so that a failure of proof on the element of forcible compulsion resulted; and failure to challenge the ongoing jurisdiction of the trial court based on the defective indictment.[30]   As a result, Williams now maintains that a reasonable probability exists that he pled guilty to a criminal charge over which the Hardin Circuit Court lacked subject matter jurisdiction.  (*Id.*).

He concludes his memorandum with a final claim that the circumstances of his case, contrary to the decision of the Kentucky Court of Appeals in *Williams II*, satisfy both prongs of the *Strickland* test for ineffective assistance of counsel.  He asks that the Court apply the prevailing norms of legal practice as reflected in the standards of the American Bar Association as a guideline to determine whether his trial counsel performed a reasonable investigation and trial preparation.

The warden has filed an answer to the petition (DN 13).  In his answer, the warden initially claims that Williams has failed to raise the issue of subject matter jurisdiction as a matter of federal law.  Williams according to the Warden instead relies solely upon state law, the Kentucky constitution and state cases, and therefore cannot obtain habeas corpus relief on the primary jurisdictional issue he raises.  Additionally, the warden contends along the same lines that Williams did not timely raise the jurisdictional issue, regardless of its status as a state claim, when he failed to bring the issue to the attention of the trial court, or even the attention of the

---

[30] (DN 1, Memo., at p. 9).

Kentucky Court of Appeals.

Further, the warden insists that the Kentucky Court of Appeals properly found that Williams had full notice of the nature of the felony charge he faced and was completely aware that it was not the misdemeanor offense of third-degree sexual assault under KRS 510.130. The warden cites to the findings of the trial court on post-conviction review pursuant to RCr 11.42 as irrefutable evidence of Williams' complete knowledge that the issue of force would be debated should he choose to go to trial (DN 13, Memo., pp. 8-9). The warden concludes that none of the state court opinions has been shown by Williams to be objectively unreasonable or contrary to the clearly established precedent of the U.S. Supreme Court, nor has Williams shown that any such decision is based on an unreasonable determination of the facts.

Williams has filed a lengthy reply to the Warden's response (DN 15). The reply appears to contains two primary arguments. The first argument focuses on Williams' claim of ineffective assistance of trial counsel. Williams maintains that his appointed counsel, contrary to the factual findings of the Hardin Circuit Court, did not speak to him about any possible deficiencies in the indictment, but rather only discussed his possible acceptance of a plea agreement (DN 15, p. 21-22). Further, he asserts, for the first time in this proceeding, that an actual conflict existed between him and appointed counsel, who also misadvised him prior to the entry of his guilty plea concerning his eligibility for parole, wrongfully telling him that he would be eligible after service of only two years of imprisonment (Id. at 27, 29). Williams also now contends in the second argument of his reply that the factual findings of the Hardin Circuit Court contained in its decision denying post-conviction relief are not supported by the testimony rendered at the evidentiary hearing held on December 15, 2008, portions of which he includes in

his reply (Id. at 29-31, 38-42). Along the same lines, Williams argues that during the hearing held on January 13, 2009 on his motion for the state circuit court to reconsider its RCr 11.42 order of December 22, 2008 he was denied his right to the presence of counsel (Id at p. 44-46).[31]

Because Williams' primary argument concerning jurisdiction involves purely a matter of state law and was raised in an untimely fashion and denied as such, the warden requests that Williams' petition be dismissed with prejudice. The Magistrate Judge agrees as explained below and further concludes, after review of the state court record, that the Kentucky Court of Appeals decision rejecting Williams' Sixth Amendment claim of ineffective assistance of counsel is neither contrary to, nor an unreasonable application of, the *Strickland* standard. For these reasons the Magistrate Judge shall recommend that Williams § 2254 petition be dismissed with prejudice and that he be denied a certificate of appealability under 28 U.S.C. § 2253(c).

**Standard of Review**

The first question that the Court must address before it may reach the substance of Williams' petition for habeas corpus relief, or the arguments discussed above, is the appropriate standard for review. Under the AEDPA, a federal court may not grant a writ of *habeas corpus* to a person in custody pursuant to a state court judgment unless the adjudication of the prisoner's claims in state court: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as defined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts

---

[31] The Court has obtained and reviewed a copy of the video-recorded proceedings held on William's Rcr 11.42 motion and his motion to reconsider (DN 17)

in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d)(1)-(2)(2004); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (discussing the standard of 28 U.S.C. § 2254(d)(1)-(2)).

The Supreme Court elaborated on the meaning of this statutory language in *Williams v. Taylor*, 529 U.S. 362, 405-13 (2000). In so doing, the Court noted that § 2254(d) "places a new constraint on the power of the federal courts to grant a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court." *Williams*, 529 U.S. at 412. A state court decision will be "contrary to" the precedent of the Supreme Court only if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite] result." *Id.* at 405. *See Treesh v. Bagley,* 612 F.3d 424, 428-29 (6th Cir. 2010)(discussing *Williams*).

A state court opinion will violate the "unreasonable application" clause of § 2254(d)(1) when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts." *Williams*, 529 U.S. at 413 . *See, Phillips v. Bradshaw,* 607 F.3d 199, 205 (6th Cir. 2010); *Bell v. Cone*, 535 U.S. 685, 694-95 (2002)(same). A state court opinion also may be an "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).

The Supreme Court in *Williams* explained that "a federal court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The Court added that the term "objectively unreasonable" means that "[a] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. *See also, Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Owens v. Guida*, 549 F.3d 399, 404-05 (6th Cir. 2008) ("Ultimately, the AEDPA's highly deferential standard requires that this court give the state-court decision 'the benefit of the doubt.'") (quoting *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir 2006)).

When determining the "clearly established federal law," the courts may look only to the holdings of decisions of the Supreme Court of the United States at the time the petitioner's state conviction became final. *Williams*, 529 U.S. at 380; *Abella v. Martin*, 380 F.3d 915, 924 (6th Cir. 2004). It is error for the federal courts to rely solely on authority other than the Supreme Court of the United States in their analysis under § 2254(d). *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The decisions of lower federal courts may be considered, however, as being informative of whether a legal principle or right has been clearly established by the Supreme Court. *Smith v. Stegall*, 385 F.3d 993, 997-98 (6th Cir. 2004).

Additionally, the AEDPA standard of review will only apply to those claims that were "'adjudicated on the merits in the state court proceedings.'" *Phillips,* 607 F.3d at 205 (*quoting Hartman v. Bagley,* 492 F.3d 347, 356 (6th Cir. 2007)). *See also, Montes v. Trombley,* 599 F.3d 490, 494 (6th Cir. 2010)("if a claim is fairly presented to the state courts, but those courts fail to adjudicate the claim on the merits, then the pre-AEDPA standards of review

apply"). *See also, Cone v. Bell*, ___U.S. ___, ___, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009). Under such review, questions of law, including mixed questions of law and fact, are reviewed de novo, and questions of fact are reviewed under the clear-error standard. *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir.2008).")

 The AEDPA affords deferential treatment to the findings of fact made by the state court during the proceedings at trial and on appeal. Specifically, 28 U.S.C. § 2254(e)(1) provides that, "[a] determination of a factual issue made by state court shall be presumed to be correct." *Id. See Thompson v. Bell,* 580 F.3d 423, 434 (6th Cir. 2009)("A habeas court must presume the state court's factual findings are correct.") Further, '[t]he applicant [for § 2254 relief] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Mahdi v. Bagley*, 522 F.3d 631, 636-37 (6th Cir. 2008). Accordingly, the factual findings of the state courts are reversed only if the petitioner establishes that they are clearly erroneous. *See Williams v. Bagley*, 380 F.3d 932, 941-42 (6th Cir. 2004); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (presumption of correctness applies to fact findings made by a state appellate court based on the state trial record). *See also, Sumner v. Mata*, 449 U.S. 539, 546 (1981) (holding that § 2254 makes no distinction between the factual determination of a state trial court and those of the state appellate court).

**Exhaustion and Procedural Default.**

 The next preliminary matter that the Court must take up before it may potentially address the substance of Williams' jurisdiction-related claim, or his claim of ineffective assistance of counsel at trial, is the related question of exhaustion and procedural default. The

warden, as noted, insists that Williams' jurisdictional claim cannot be reviewed on its merits due to his multiple procedural defaults during the state court proceedings. This position requires the Court to briefly pause to set forth the law as it relates to procedural default in the context of habeas corpus proceedings.

The doctrine of procedural default rests on considerations of comity and federalism. *See, Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997) (citing *Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997)). It provides in essence that the federal courts "will not reach a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler,* 558 U.S. at ___, 130 S. Ct. 612, 614 (2009)( citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). *See, Walker v. Martin,* ___ U.S. ___, 131 S. Ct. 1120, 1127-28 (U.S. 2011)(quoting *Kindle*r). An "independent and adequate state ground" will bar consideration of those federal claims in a federal habeas corpus proceeding that have been defaulted under state law, unless the default is excused. *Coleman*, 501 U.S. at 729-30; *Brown v. Allen*, 344 U.S. 443, 486-87 (1953). To qualify as an adequate state ground the state procedural rule must be "firmly established and regularly followed. *Kindler,* 558 U.S. at ___, 130 S. Ct. at 618.

A federal claim brought by a state prisoner in a habeas action may become procedurally defaulted in state court in two different ways. *See, Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). A prisoner first may procedurally default a given claim by failing to comply with an established state procedural rule when presenting his claim at trial or on appeal in the state courts. *See, Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (Florida petitioner who

failed to timely challenge his confession at trial as required by Florida rules of criminal procedure procedurally defaulted his *Miranda* claim absent a showing of "cause" and "prejudice.").

If the state courts unambiguously rely on the prisoner's procedural failure to refuse to address the merits of the prisoner's constitutional issue, and the state procedural rule involved is an adequate and independent ground on which to preclude relief, then the federal courts will hold the prisoner's habeas claim to be procedurally defaulted. *Williams*, 460 F.3d at 806 (*citing Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). The federal courts consequently will not reach the merits of the procedurally defaulted claim unless the Petitioner is able to demonstrate cause for the default and prejudice resulting therefrom or that manifest injustice will result if the claim is not addressed. *Id*. (citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006)). *See Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 787 (2011)( "If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of Wainwright v. Sykes, 433 U.S. 72, 82-84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.")

The Sixth Circuit will apply the 4-prong test announced in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) to determine when a procedurally defaulted claim may receive federal review. The Sixth Circuit in *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001) explained the *Maupin* test as follows:

> This court's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138. Second, the

> court must decide whether the state courts actually enforced its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id.* And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*; see also *Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), cert. denied, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

*Id. See also, Beard,* 130 S.Ct. at 617-18(citing *Lee v Kemna,* 534 U.S. 362, 275 (2002));

*Bowling v. Parker*, 344 F.3d 487, 498-99 (6th Cir. 2003), *cert denied*, 543 U.S. 842 (2004)

(discussing *Maupin*).

The second manner in which a state prisoner may procedurally default a claim is by failing to raise the federal claim at issue in the state court, or to pursue the same claim through the state's "ordinary appellate review procedures." *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999)). Any such claim will be held to be procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim in the state courts. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Engle v. Issac*, 456 U.S. 107, 125 n. 28 (1982). In such instances, the problem with the claim is one of procedural default, not failure to exhaust available state remedies.

As *Williams* explains, the two concepts, exhaustion and procedural default, are frequently confused, yet are distinct concepts. *Williams*, 460 F.3d at 806. The requirement of exhaustion relates only to those state remedies that remain available at the time the federal habeas petition is filed. *Engle*, 456 U.S. at 125 n. 28. If no state remedies remain available

because a state prisoner failed to pursue them within the time allotted by state law, then procedural default will bar federal court review, not a failure to exhaust available remedies as none remain available. *Id*. If the petitioner failed to fully and fairly present his claim as a federal constitutional claim throughout the state court proceedings, and state remedies remain available to pursue, then the issue is one of failure to exhaust rather than procedural bar. *Id.*

Several important qualifications must be added when one discusses procedural default in either of its variations. First, neither the exhaustion doctrine nor procedural default are jurisdictional limitations on the federal courts. *See Pudelski v. Wilson,* 576 F.3d 595, 605-606 (6th Cir. 2009)(citing *Cain v. Redman,* 947 F.2d 817, 820 (6th cir. 1991)). In other words, exhaustion and procedural default may be waived, *Baze v. Parker,* 371 F.3d 310, 320 (6th Cir. 2004),*cert denied,* 544 U.S. 391 (2005)("The state may waive the defense by not asserting it.")(citing *Scott v. Collins,* 286 F.3d 923, 927-28(6th Cir. 2002)), or even in the case of procedural default, simply be ignored by the federal courts when to do so would not affect the resolution of the outcome and would simplify the analysis of a petitioner's § 2254 claims. *See Babick v. Berghuis,* 620 F.3d 571, 576 (6th Cir. 2010)("We cut to the merits here, since the cause- and-prejudice analysis adds nothing but complexity to the case.")(citing *Hudson v. Jones,* 351 F.3d 292 215 (6th Cir. 2003).

Second, a procedural default will not necessarily occur, even when a petitioner has undisputedly violated a well established rule of state procedure, if the final state court to address the federal question does not expressly rely on the procedural deficiency to decline to reach the merits of the question raised. *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991); *Baze,* 371 F.3d at 320 ("If a state court does not expressly rely on a procedural deficiency, then a

federal court may conduct habeas review.")(citing *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985)("[t]he mere existence of a basis for a state procedural bar does not deprive [the federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.")).

When the state court decision rests primarily on, or is interwoven with, federal law, the last state court to render a reasoned judgement must clearly and expressly state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply, otherwise the presumption is that the decision rests on federal grounds. *Coleman,* 501 U.S. at 735; *Harris v. Reed,* 489 U.S. 255, 265 (1989).  *See also, Bowling v. Parker,* 344 F.3d 487, 499 (6ᵗʰ Cir. 2003).  Merely because the state court decision goes on to discuss, in the alternative, the merits of a claim that it otherwise has held to be barred based on an independent procedural ground, however, does not remove the procedural default. *See Baze,* 371 F.3d at 319)(citing *Clifford v. Chandler,* 333 F.3d 724, 728-29 (6ᵗʰ Cir. 2003) *overruled in part on other grounds, Wiggins v. Smith*, 539 U.S. 510 (2003)).


**Subject Matter Jurisdiction.**

The Court has carefully examined the indictment returned against Williams.  The examination confirms that the indictment charges Williams with sexual abuse in the first degree.  The indictment includes the correct name of the charged offense as well as its correct classification as a class D felony.  The indictment further cites to the correct statute number for

the named charge, KRS 510.110. [32] Only in the descriptive portion of the indictment does it fail to specifically include the element of "forcible compulsion" required by KRS 510.110.

This omission, solely as a matter of state law, did not deprive the Hardin Circuit Court of its jurisdiction as once a defendant is indicted on a felony charge in Kentucky, the circuit court has jurisdiction. *Commonwealth v. Adkins*, 29 S.W.3d 793, 794-96 (Ky. 2000). All that is necessary for jurisdiction to attach is that the indictment name the charged felony offense. *See, Thomas v. Kentucky*, 931 S.W.2d 446, 449 (Ky. 1996) ("All that is necessary to 'charge an offense,' as required by RCr 8.18 is to name to offense."). Accordingly, the Kentucky Supreme Court in *Thomas* upheld an incomplete indictment that charged a Kentucky defendant with first degree robbery, despite the failure of the indictment to allege that the defendant threatened force against the victim. *Id.*

In the words of the Kentucky Supreme Court, "That defect does not mean the indictment failed to 'charge an offense' or was insufficient to support a conviction." *Thomas*, 931 S.W.2d at 450. The court in *Thomas* continued to explain that under RCr 6.12 an indictment will not be deemed invalid, nor will the judgment or proceedings thereunder be "affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits." *Id.*

Here, state law clearly establishes that the defect in the indictment returned against Williams did not strip from the Hardin Circuit Court of its jurisdiction. Williams was fully aware of the felony offense of which he was charged, as well as the element of forcible

---

[32] KRS 510.110(1)(a) provides that "a person is guilty of sexual abuse in the first degree when...he or she subjects another person to sexual contact by forcible compulsion...."

compulsion. The trial court found that he discussed the forcible compulsion question in detail with his attorney prior to the entry of his knowing, voluntary and intelligent plea of guilty. Our review of the video record of the proceedings confirms the factual basis for the court's findings based on the testimony of Williams' appointed trial counsel. Indeed, Williams did not seriously dispute during the state court post-conviction proceedings that he had actual notice that forcible compulsion would be a potential issue at his trial. Therefore, Williams cannot in any fashion claim prejudice to his substantial rights as required by RCr 6.12 by virtue of the defect in the indictment.

More importantly, this entire argument was not only untimely raised on motion for discretionary review after entry of *Williams II*, but was pursued only as a matter of state law. *See gen. McMeans v Brigano,*, 228 F.3d 674, 681 (6th Cir. 2000)(A petitioner need not cite federal law book and verse to fairly present a claim, but the factual and legal underpinnings of the claim must be presented as a federal claim to the sate courts.) Williams in his motion for discretionary review cites no provision of the U.S. Constitution. He references no federal case law that interprets the Sixth Amendment or Fourteenth Amendment of the U.S. Constitution. He does not use the language normally associated with such arguments of federal constitutional law. Finally, what decisions he does cite, all of which are Kentucky state court decisions, do not discuss the federal Constitution in relation to the topic of dispute - - the sufficiency of an indictment as it relates to the jurisdiction of the trial court. Accordingly, the federal courts cannot afford Williams any relief on his jurisdictional claims, as he has not timely raised and fully pursued such claims as a matter of federal constitutional law, and state law in any event fully supports the decision of the trial court. *See, United States v. ex rel. Holliday v. Sheriff of Du*

*Page County, Ill*, 152 F.Supp.2d 1004, 1011-12 (N.D. Ill. 2001) (habeas petitioner who raised jurisdictional challenge based solely on Illinois state law failed to fully and fairly raise a federal constitutional issue).

We are supported in this conclusion by several decisions of the Sixth Circuit. In *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986), the defendant alleged in his habeas corpus petition that he was denied due process of law because the state indictment did not allege all elements of the offense of aggravated robbery under Ohio law. *Id*. Specifically, the defendant claimed that the indictment did not allege that the act of robbery was done knowingly, a required element of the offense. In rejecting this argument, a three-member panel of the Sixth Circuit explained that "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Id*. at 693 (citing *Blake v. Morford*, 563 F.2d 248, 250 (6th Cir. 1977), *cert. denied*, 434 U.S. 1038 (1978) and *Combs v. Tennessee*, 530 F.2d 695, 698-99 (6th Cir. ), *cert. denied*, 425 U.S. 954 (1976)). *See also, Silk v. Johnson*, 2009 WL 742552 at *3-4 (E.D. Va. 2009) ("A claim that a state court lacks jurisdiction under state law presents no federal constitutional issue for habeas review.").

Not only did Williams fail to raise the jurisdictional challenge as a federal constitutional issue, his state claim for lack of subject matter jurisdiction of the state trial court is procedurally barred as well due to his failure to raise it before the trial court. Williams did not timely bring his claim to the attention of the trial court as required by RCr 8.18. The Kentucky Court of Appeals in *Williams I* at footnote 3 expressly noted that Williams' claim related to the missing element of forcible compulsion was not timely put before the Hardin Circuit Court.

The Kentucky Court of Appeals opinion in *Williams I* was the final opinion of the highest state court to address the timeliness of Williams' argument.  The court clearly relied upon a state rule of procedure to decline to further address the question.  The Rule, RCr 8.18, is long established and well followed in Kentucky.  *Wood v. Commonwealth,* 567 S.W.2d 121, 123 (Ky. 1978)(Defendant who failed to timely challenge a kidnaping indictment as being defective waived his objection in accordance with RCr 8.12); *Vickers v. Commonwealth,* 472 S.W.2d 469, 471 (Ky. 1971) (Kentucky defendant who failed to timely challenge indictment for carnal knowledge  that omitted the exact age of the alleged minor victim waived his challenge to the indictment under Rcr 8.12); *Cole v. Commonwealth,* 405 S.W.2d 753, 754 (Ky. 1966)(same); *Cook v. Commonwealth,* 401 S.W.2d 51, 53-54 (Ky. 1966)(indictment that charged defendant with recklessly throwing a missile, but omitted the term "reckless" could not be challenged after trial).

Williams has not established cause or prejudice for his failure to comply with this adequate and independent rule of state procedure, nor has he attempted to establish manifest injustice should we decline to address the merits of his jurisdictional arguments.  Therefore, not only is the issue raised not a federal claim, but even were the claim to have been argued under federal constitutional law, the federal courts would nonetheless be unable to address it given Williams' procedural default  below.  *See Beaulieu v. Minnesota,* 583 F.3d 570, 572-74 (8th Cir. 2009)(Minnesota prisoner's habeas claim of alleged jurisdictional defect in the state court proceedings was procedurally defaulted and unreviewable in federal court because he failed to present it in a timely manner to the Minnesota courts.)  For these reasons, the Court is compelled to reject Williams' subject matter jurisdiction challenge, the primary argument raised in his

petition.[33]


**Ineffective Assistance of Counsel**

    Williams in his memorandum of law, and more so in his reply, asserts the

ineffective assistance of trial counsel, although the argument is not included in the question

presented section at page 3 of the memorandum that accompanies his petition.  Nevertheless, the

Court has examined this Sixth Amendment issue under the AEDPA standard of review.

Independent review confirms that the Kentucky state courts reasonably applied the clearly

---

  [33] As an aside, the Court notes that even had it reached the merits of Williams' federal
constitutional claim for lack of subject matter jurisdiction arising from an allegedly defective
state indictment, the result of this recommendation would not be affected.  Those federal courts
that have reached the merits of such claims hold that "practical, not technical, considerations
generally govern the validity of the charging instrument...." *See gen. United States v. Morales,*
838 F.2d 1359, 1361 (5th Cir. 1988); *Tillman v. Cook,* 25 F. Supp. 2d 1245, 1291-94 (D. Utah
1990)("An indictment need only meet minimal constitutional standards, and we determine the
sufficiency of an indictment by practical rather than technical considerations.").
  Under the Sixth and Fourteenth Amendments, a state defendant is entitled to fair notice
of the criminal charges against him so that a due process violation may be pursued in a habeas
corpus action if the defendant can show that he or she was not provided with adequate notice by
the challenged indictment.  *Palmer v. Hartley,* 2010 WL 5476793 at *8 (D. Col. Dec. 30, 2010).
When a defendant delays his challenge until after conclusion of the trial court proceedings, the
challenged language of the indictment will be construed liberally in favor of validity.  *United
States v. DeSantiago-Flores,* 107 F.3d 1472, 1480 (10th Cir. 1997). Further, "the statute need not
be fully quoted if the allegations adequately put the defendant on notice of the charge." *United
States v. Edmonson,* 962 F.2d 1535, 1542 (10th Cir. 1992).  A reference to the relevant state
statutes charged has been held to be sufficient to satisfy the notice requirement. *Nevius v.
Sumner,* 852 F.2d 463 (9th Cir. 1988).
  Here, Williams had ample notice from the indictment of the charged felony offense even
though the indictment omitted mention of the element of forcible compulsion. Williams
discussed the statute with his appointed counsel, read the language of the statute himself and
expressed his concerns about the lack of force.  The trial court specifically found that Williams
had notice of the charged offense under KRS 510.110 and our own independent examination of
the video record of the state proceedings confirms this finding. Accordingly, as a matter of
federal constitutional law, the challenged indictment simply was not so defective as to deprive
the state court of its jurisdiction to enter a judgment of conviction.

established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984) and its companion case, *Hill v. Lockhart*, 474 U.S. 52 (1985) to conclude that Williams' appointed trial counsel was not deficient in her performance when she strategically chose not to immediately challenge the validity of the indictment in order to retain the ability to present such a challenge at the time of trial. This finding of the trial court, contrary to Williams' assertion in his reply, is amply supported by the video record of the post-conviction evidentiary hearing held on December 15, 2008. Williams has not established in any fashion that the findings of the trial court are clearly erroneous.

Further, the state courts reasonably concluded that Williams suffered absolutely no prejudice by his trial attorney's decision in this respect. Williams was well aware that the question of forcible compulsion would be debated at trial. He had discussed the issue with his attorney, had read the statute, and had expressed his belief that the amount of force used when he reached inside the open door to grab the victim's breast was not sufficient to support the class D felony charge against him under KRS 510.110. The trial court found, and the Court of Appeals agreed, that Williams risked a substantial possibility had he elected to go to trial that the jury would have rejected his position on the amount of force involved and well might have recommended that he receive the maximum penalty available, a ten year term of imprisonment, given his status as a persistent felony offender.

While Williams insists that his trial attorney rendered ineffective assistance, he has presented no authority that would remotely indicate that the state court's application of the *Strickland* standard was contrary to, or an unreasonable application of *Strickland*, or any other clearly established precedent of the U.S. Supreme Court. No such authority exists. Indeed the

most recent decision of the U.S. Supreme Court in this area re-emphasizes the extraordinary deference to be afforded trial counsel in the area of plea bargaining. *See Premo v. Moore*, 562 U.S. ___ , 131 S.Ct. 733 (2011)("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage.") Thus, no constitutional basis exists for the federal courts to afford Williams habeas corpus relief on his claim of ineffective assistance of trial counsel given his complete failure to satisfy the standard of review established by 28 U.S.C. § 2254(d)(1). *See Savell v. Epps,* 2010 Wl 3724549 at *11 (S.D. Miss. Aug. 13, 2010)(rejecting ineffective assistance of counsel claim based on claimed failure to sufficiently challenge an allegedly defective indictment).[34]

The final question remaining is whether Williams is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c). A state prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition must satisfy the COA requirements of 28 U.S.C. § 2253(c). A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A COA will issue only when a prisoner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court is required to make an individual assessment of the issues and to

---

[34] Williams' most recent claims of (1) an actual conflict of interest with trial counsel, (2) attorney misadvice on parole eligibility and (3) absence of counsel at his post-conviction hearing on his motion to reconsider the denial of Rcr 11.42 relief were neither timely raised nor adequately pursued below; therefor, the court does not address them now given the absence of cause or prejudice, or manifest injustice for Williams' default.

indicate which specific issue or issues satisfy the standard of § 2253(c). *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)). A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Petitioner Williams has failed to make the required showing in this case. He has not established a substantial showing of the denial of a federal constitutional right, nor has he demonstrated that reasonable jurists could debate the jurisdictional and ineffective assistance reasoning of the Court. Accordingly, the Magistrate Judge recommends that a COA be denied.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the petition be **DISMISSED WITH PREJUDICE** and that the Petitioner be **DENIED** a certificate of appealability under 28 U.S.C. § 2253(c).

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd.*, 474 U.S. 140 (1985). 28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72(b).

Copies to Counsel of Record